IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF GEORGIA
~~Macon~~ ~~ATHENS~~ DIVISION

| | | |
|---|---|---|
| Diahann Stevens **Plaintiff** | : : : : | |
| vs. | : : | C. A. No. 5:04-CV-201-3 (WDO) |
| Howard Richard Sills Badge No. 117 **Defendant** | : : : : : : | *SUPPLEMENTAL COMPLAINT* TITLE 42 U.S.C.A. § 1983 |

## A. JURISDICTION

1.    This action arises in accord with Title 42 U.S.C.A. § 1983. Plaintiff is a citizen of the State of Georgia, a natural-born citizen of the United States of America.

## B. NATURE OF CASE

2.    Plaintiff contends her civil rights at the Fifth and Fourteenth Amendments to the Constitution of the United States, privileges and immunities, and laws there from have been violated under color of state law. Defendant is the Sheriff of Putnam County, State of Georgia.

3.    Plaintiff asserts understanding that Chief Justice Taft observed that the due process and equal protection clauses are "associated" and that "[i]t *may be that they overlap, that a violation of one may involve at times the violation of the other,...*" Truax v. Corrigan, 257 U.S. 312, 331 (1921). Further, the "**Equal protection analysis in the**

1

Fifth Amendment area," the Court has said, "is the same as that under the Fourteenth Amendment." Buckley v. Valeo, 424 U.S. 1, 93 (1976); Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2 (1975). Furthermore, it should be noted that some Fourteenth Amendment interpretations have been carried back to broaden interpretations of the Fifth Amendment's due process clause, such as, e.g., the development of equal protection standards as an aspect of Fifth Amendment due process. French v. Barber Asphalt Paving Co., 181 U.S. 324, 328 (1901).

## C. FIRST CAUSE(S) OF ACTION AND NARRATIVE

1.      On or about September 25, 1998 A.D. the Department of Family and Child Services (DFACS), State of Georgia, informed the Defendant of alleged child molestation(s) occurring on the property, 404 Shady Dale Road Eatonton, Georgia 31024.

2.      On or about September 27, 1998 A.D. Defendant received an anonymous letter alleging child molestation had been occurring on 404 Shady Dale Road Eatonton, Georgia 31024.

2.      On or about February 17, 1999 A.D. through to March 2002 A.D. alleged victims and witnesses to child molestation occurring on 404 Shady Dale Road Eatonton, Georgia had come forth during the investigation of Howard Richard Sills.

3.      On or about May 8, 2002 A.D. Consequently and subsequently as a result of a four year investigation by Howard Richard Sills and the Federal Bureau of Investigation, an armed and barbaric raid of said property took place, resulting in the custodial interrogations and kidnapping of various inhabitants/visitors of said

property, causing unnecessary harm mentally and physically to innocent children, women and men; leaving the said innocent, as well as others directly in association with the use of the said property, terrorized and scarred. (Said raid led to the adjudication of criminal charges in U.S. v. York (5:02-CR-27-1) in the U.S. District Court, Middle District of Georgia)  Certain Defendants in connection re U.S. v. York have confessed under oath that they allegedly have individually or collectively sexually abused minors on said property, and Howard Richard Sills had a working knowledge of such acts, yet kept this to himself while he "investigated" the reports for four years.  The property is a place for the Yamassee Native Americans of the Creek Nation, as well as friends, family, and visitors, who come to play, pray, eat, sleep, celebrate, and assemble for various reasons; this includes infants, the young and the elderly.

2.       All said innocent, including Plaintiff and Plaintiff's family, were not informed of any reports of child molestations by Howard Richard Sills, prior to the said raid, who was and is a responsible party for receiving reports of child molestation in accord with the **Official Code of Georgia Annotated (O.C.G.A.)** 19-7-5, which calls for the mandatory reporting of such allegations *".. in an effort to prevent further abuses, to protect and enhance the welfare of these children, and to preserve family life wherever possible."* The non-arrests of the alleged responsible parties of child abuse/molestation at the said property, as described within the report(s) given to Howard Richard Sills in 1998, constitutes a criminal act in Georgia law enforcement procedure to wit in the **Georgia Law Enforcement Handbook of Criminal Law and Procedure** at § 2-4 states, "

*While some states have considered a delay in arrest as a due process violation, it has been said that a dismissal of an indictment is required for pre-arrest or pre-indictment delay only if it is shown that (1) the delay caused substantial prejudice to the defendant's right to a fair trial and that (2) the delay was an intentional device to gain a tactical advantage over the defendant."* Although Plaintiff does not litigate, hereby, the U.S. v. York case, (though Defendant via the media wishes to perpetuate that misconception,) four years to make an arrest sounds very much so as a "delay" device to gain a tactical advantage of defendant York, and as a result of this tactical device being used in that case, citizens involved with the said property were ever so displaced with deprived indifference and deprived equal protection of laws, without due process, under color of law. Plaintiff contends that if the State of Georgia and Putnam County lawfully have jurisdiction over the said property, inhabited by an indigenous peoples, then the Sheriff of said county is duty bound to serve and equally protect all natural persons of/on the said property as well, and lawfully can't just "pick and choose" to whom is entitled the equal protection of laws while in the pursuit of an alleged child abuser(s), thus depriving others of their national and state rights as enumerated within the Constitutions of the United States and of the State of Georgia, as well as enumerated within O.C.G.A. 1-2-

6. An arrest(s) based upon DFACS' said report to Howard Richard Sills should have been made, for the sake of the Plaintiff's child, because Plaintiff's child came in direct contact with the defendant in the case U.S. v. York (5:02-CR-27-1). Intervention should have occurred with no delay; any parent would demand redress in re the inactions to defend their child's welfare. O.C.G.A. 19-7-5 clearly indicates that if an

4

agency/entity/persons such as DFACS receives reports of child abuse, and thus *"...having reasonable cause to believe that a child has been abused shall report or cause reports of that abuse to be made as provided in this code section: .."* DFACS did in fact report to Howard Richard Sills about child abuse concerning the said property in 1998, and Defendant doesn't deny having such knowledge, as quoted recently in "The Union-Recorder" newspaper and website articles by Payton Towns III, titled <u>Nuwaubians sue Putnam sheriff</u>; Howard Richard Sills is quoted saying *"You don't see lawsuits on the FBI. They were just as aware of what was going on in 1998 as I was. We jointly investigated the case the entire time."* It is a well known fact that the Defendant refers to the residents/visitors of said property as a "cult" and if so even true, though not, this is America: life, liberty, and the pursuit of happiness includes the right to assembly; churches, synagogues, halls, temples, cults, and the likes are all to be protected. Defendant is further quoted in said newspaper and website that *"... there is a difference in having information and having enough to make a case while dealing with a cult that at that time sometimes had thousands of people on the property."* So, Howard Richard Sills expects the Plaintiff, the Court, and the world to believe that in a period of 1,456 days (four years,) that 28 days (four weeks,) of Pow-Wows (the *"sometimes"* Defendant can only be referring to that usually only takes up 7 days out of a year,) held by the Yamassee Native Americans of the Creek Nation on the said property, (when a large number of people from around the world come to partake in the Yamassee indigenous affairs,) impeded the "investigation"? Does the Defendant expect the Plaintiff, the Court, and the world to believe that DFACS' said reporting was based on frivolous claims of abuse, and that DFACS' report was based upon something not worth

informing the concerned parents and/or public of, whose welfare was at stake? Plaintiff contends that Howard Richard Sill's claim of why the "investigation" took so long is frivolous. How too often do we hear of reports of abuse done by neighbors, only for DFACS to send a case worker or some other official to intervene expeditiously on a child's/children's behalf, but for some unlawful reason Howard Richard Sills, as well as those who may have joined him in his official duties in the matter, grossly neglected the children and parents who live/visit the said property. In opposition to his official duties as a Sheriff within the State of Georgia, Defendant with gross negligence failed to take immediate and effective action to remedy the report(s) of alleged child molestation(s), as well as to communicate the said allegation(s)/information in re of child molestation(s) to the concerned parties, the general public/visitors and inhabitants/occupants of said property; all to whom he serves, as a Constitutional officer. Defendant consequently and subsequently situated Plaintiff and her child with depraved indifference by allowing a threat to her child's health and welfare to continue for a period of or about four years, negligently dismissing the public welfare, concerns, rights and immunities of the citizens of the state of Georgia and the citizens of the United States of America without due process; all while under color of law, in a clandestine investigation seeking to arrest Malachi York: Chief Black Thunderbird of the Yamassee Native Americans of the Creek Nation, Bureau of Indian Affairs petition No. 108. ( U.S. v. York (5:02-CR-27-1),).

3.      In Berman v. Parker, 348 U.S. 26, 32-33 (1954), a unanimous Court observed: *"The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to*

*determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled."* Furthermore *"Whoever, by virtue of public position under a State government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State."* Ex parte Virginia, 100 U.S. 339, 346-47 (1880).

Police powers have been processed and defined for some time now, and Howard Richard Sills in no way is exempt from his duties to the standards of proper policing. The course of which the restricted view of the police power advanced by Justice Field in his dissent in <u>Munn v. Illinois</u>, 94 U.S. 113, 141-48 (1877), namely, that it is solely a power to prevent injury, was in effect ratified by the Court itself. This occurred in <u>Mungler v. Kansas</u>, 123 U.S. 623, 661 (1887), where the power was defined as embracing no more than the power to promote public health, orals, and safety. During the same interval, ideas embodying the social compact and natural rights, which had been espoused by Justice Bradley in his dissent in the <u>Slaughter-House Cases</u>, 83 U.S. (16 Wall.) 36, 113-14, 116, 122 (1873), had been transformed tentatively into constitutionally enforceable limitations upon government. <u>Loan Association v. Topeka</u>, 87 U.S. (20 Wall.) 655, 662 (1875). The consequence was that States in exercising their police powers could foster only those purposes of health, morals, and safety which the Court had enumerated, and could employ only such means as would not unreasonably interfere with the fundamentally natural rights of liberty and property, which Justice Bradley had equated with freedom to pursue a lawful calling and to make contracts for that purpose. *"Rights to life, liberty, and the pursuit of happiness*

7

*are equivalent to the rights of life, liberty, and property. These are fundamental rights which only can be taken away by due process of law, and which can only be interfered with, or the enjoyment of which can only be modified, by lawful regulations necessary or proper for the mutual good of all. . . . This right to choose one's calling is an essential part of that liberty which is the object of government to protect; and a calling, when chosen, is a man's property right. . . . "* (Justice Bradley dissenting.) Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 116, 122 (1873) It has been, and continues to be Plaintiff's calling to associate, assemble, and participate on the said property as a Nuwaupian and as a part of the Yamassee Native Americans of the Creek Nation, since being an indigenous person himself; Plaintiff's calling is thus lawfully his property right which has not been equally protected by Howard Richard Sills' negligent (gross) misuse of power.  The *"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."* U.S. v. Classic, 313 U.S. 299, 326 (1941).

4.    Howard Richard Sills admits that he was negligent in his duties when asked by Shane Venter on June 17, 2004 A.D. in conference room G of the Hutchinson Island Westin Hotel in Savannah, Georgia at the Georgia Press Association; Shane Venter asked Howard Richard Sills *"Since you waited 5 Years after receiving a...anonymous letter from Pauline Rogers, alleging child molestation, which would have allowed hundred of innocent children to be placed in harm's way, doesn't that make you guilty of gross negligence? "*  Howard Richard Sills responded by stating, *"I didn't have enough information to build a case and if that makes me negligent then I stand negligent."* Here he admits that he was neglect and accepted that term for his actions.

8

When the denial of equal protection is not commanded by law or by administrative regulation but is nonetheless accomplished through police enforcement of "custom", Cf. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), or through hortatory admonitions by public officials to private parties to act in a discriminatory manner, Lombard v. Louisiana, 373 U.S. 267 (1963), the action is state action. When a State clothes a private party with official authority, he may not engage in conduct forbidden by the State. Griffin v. Maryland, 378 U.S. 130 (1964). Howard Richard Sills need not even be an employee of the State of Georgia to act "under color of" state law; he may merely participate in an act with state officers. U.S. v. Price, 383 U.S. 787 (1966). "Acts done 'by virtue of public position under a State government . . . and . . . in the name and for the State' . . . are not to be treated as if they were the acts of private individuals, although in doing them the official acted contrary to an express command of state law." Note that for the purposes of being amenable to suit in federal court, however, the immunity of the States does not shield state officers who are alleged to have engaged or to be engaging in illegal or unconstitutional action Ex parte Young, 209 U.S. 123 (1908), supra, pp. 1537-44. Cf. Screws v. U.S., supra, 147-48.

## D. SECOND CAUSE(S) OF ACTION AND NARRATIVE

1.      On or about the third and/or the fifth of July, 2004, the Defendant slandered the Plaintiff in an interview with a Payton Towns III of the newspaper The Union-

Recorder, based in Milledgeville, Ga.,; this article was also published on the World Wide Web at Http://www.UnionRecorder.com/articles/2004/07/05/news/news03.txt for the entire world to see. Plaintiff relies upon the definition of slander, as presented in **Black's Law Dictionary**, sixth edition which defines, along with case law, slander as, *"The speaking of base and defamatory words tending to prejudice another in his reputation, community standing, office, trade, business, or means of livelihood. Little Stores v. Isenberg, 26 Tenn.App. 357, 172 S.W.2d 13, 16. Oral defamation; the speaking of false and malicious words concerning another, whereby injury results to his reputation. Lloyd v Commissioner of Internal Revenue, C.C.A.7, 55 F.2d 842, 844. The essential elements of slander are (a) a false and defamatory statement concerning another; (b) an unprivileged communication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of harm or the existence of special harm caused by the publication. Restatement, Second, Torts § 558."*

2.      The Defendant slanders the Plaintiff by claiming that Plaintiff is **(A)** a cult member, **(B)** a terrorist, and **(C)** part of a number of people that have continuously made efforts to thwart Defendant of his official duties since 1998; all to which is a fallacy; furthermore, Plaintiff has never filed suit against Howard Richard Sills in the past. Plaintiff is a law-abiding citizen with the utmost respect for social and political order that is in harmony with the Constitution of the United States of America. Plaintiff has received injuries from said slanderous words by now having to bear a public stain of being known as a cult member, as one who terrorizes people, and as one who thwarts a Sheriff of his duties. If the Defendant has an issue with Plaintiff

subscribing to the tenets of Nuwaupu, because he has an issue(s) with Malachi York: Maku "Chief": Black Thunderbird "Eagle" and/or other Nuwaupians, this is simply irrelevant to his duties as a law enforcement officer. By filing this action, Plaintiff does nothing more than exercising his Constitutional *"right to inform the United States authorities of violation of its laws."* (Citing In re <u>Quarles and Butler</u>, 158 U.S. 532 (1895).

## E. INJURY

1.      As a result, the welfare of Plaintiff's child, as well as the rights and immunities secured by the Constitution, and laws therefrom, were adversely affected, and the Plaintiff and Plaintiff's child suffered great pain of mind and body in the entire ordeal re allegations of child molestation at a place where the Plaintiff believed to be free from any form of child molestation acts. Furthermore, Plaintiff's name, character, image, future lineage, ability to retain/obtain employment and history have been injured by the slanderous words of Howard Richard Sills; in light of the current status of patriotism, terrorism and the existence of the P.A.T.R.I.O.T. Act, Plaintiff wants not to have her life investigated unnecessarily by the provisions of said act, by the federal government as a form of third party retaliation by the Defendant. Plaintiff only prays that her action is seen as Constitutional self defense, not offensive harassment as Defendant contends in the media.  Plaintiff asserts that the general public usually takes the words of a law enforcement officer as truthful and factual, hence Plaintiffs is at a disadvantage and has received under protest a notorious reputation by way of Defendant's slandering in public/the media.

Plaintiff is seeking punitive damages.        *Invito beneficium non datur.*

## F. PRAYER FOR RELIEF

1.      Wherefore Plaintiff prays, knowing, that"..*it is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.*" <u>Byars v. U.S.</u>, 273 US 28 (1927), Plaintiff most respectfully demands judgment against Defendant in the amended sum of $100,000 in lawful United States currency or lawful money, costs, and further relief as deemed necessary by the Court.

## <u>AFFIRMATION</u>

By my hand, I affirm, this seventeenth day of the seventh month, in the year two-thousand and four, I affix my lawful signature and seal.

/LS/ _____

Diahann Stevens

In *Propria Persona, Dei Gratia*

*Nullus jus alienum forisfacere potest*

227 Rocksprings Homes
Athens, Georgia 30606

## VERIFICATION

I, Diahann Stevens, affirm that the statements in this amended claim re Howard Richard Sills are factual and accurate to the best of my informed knowledge and belief, and hereby reserve the right to amend this claim as necessary without prejudice, in the best interests of justice.

By my hand, this _____ day of July in the year two thousand and four (2004).

/LS/ _____

Diahann Stevens,

Affiant *In Propria Persona, Dei Gratia*

*Nullus jus alienum forisfacere potest*

JURAT/NOTARY PUBLIC:

On this _____ day of July, 2004, affirmed to and subscribed before me came one Diahann Stevens.

SEAL

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

Diahann Stevens     :
**Plaintiff**       :
          :
   vs.      :  C. A. No. 1:04-CV-201-3 (WDO)
          :
Howard Richard Sills    :  Re: **AMENDED COMPLAINT**
Badge No. 117   :    :
**Defendant**      :
          :
          :

## CERTIFICATE OF SERVICE

Under penalty of perjury, I _Diahann Stevens_, certify that I have served the Defendant, Howard Richard Sills, with a copy of the Amended Complaint filed in the styled case above, by utilizing the U.S. Postal Service's Priority Mail service with the delivery confirmation option.

The said delivery confirmation No. is _0303 2460 0000 3324 1070_

Address Amended Complaint mailed to _111 Ridley DR Eatonton Georgia 31024_

/LS/_____

JURAT/NOTARY PUBLIC:

Kelley G. Minish, Notary Public
My Commission Expires
April 27, 2008

14